```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                    )
ANASTASIA TASLIS,                   )
                                    )
                  Plaintiff,        )
                                    )
v.                                  )
                                    )
U.S. BANK NA, successor trustee to  )   Civil Action
Bank of America, NA, successor in   )   No. 23-cv-10506-PBS
interest to LaSalle Bank NA, as     )
trustee, on behalf of the holders   )
of the WaMu Mortgage Pass-Through   )
Certificates, Series 2007-OA2,      )
                                    )
                  Defendant.        )
_____)
```

## MEMORANDUM AND ORDER

March 12, 2024

Saris, D.J.

### INTRODUCTION

This action arises out of a mortgage loan that Plaintiff Anastasia Taslis entered in 2007 to refinance her property in Lexington, Massachusetts. Although Ms. Taslis no longer resides at this property, she lived there when she obtained the loan. In March 2019, Taslis defaulted on her mortgage loan, causing the assignee holding the mortgage, Defendant U.S. Bank NA, to initiate foreclosure proceedings. Taslis seeks a preliminary injunction against U.S. Bank to halt the sale by foreclosure of her property.

1

After hearing, Taslis' motion for injunctive relief (Dkt. 15) is **DENIED**.

## BACKGROUND

Based on the factual record, including documentary evidence submitted by the parties, Plaintiff has demonstrated that the following facts are likely.

### I. Factual Background

Plaintiff Anastasia Taslis resides in Lexington, Massachusetts and is the record owner of the property at 241 East Street, Lexington, Massachusetts ("Property"). In October 2005, Taslis was gifted the Property by her parents and took title to the Property subject to a $1 million mortgage loan. In January 2007, Taslis sought to refinance into a more affordable loan and was ultimately granted a 30-year refinance mortgage loan by Washington Mutual Bank, FA ("WaMu"). The loan had a principal amount of $1 million. In exchange, Taslis executed a promissory note in favor of WaMu. A WaMu agent conducted a phone interview with Taslis for the loan but asked for "no income verification, no credit verification, [and] no document submissions." Dkt. 1-3 at 4. At the time she obtained the loan, Taslis was living at the Property and earning an annual salary of approximately $30,000.

From January 16 to February 1, 2007, the initial interest rate on the mortgage loan was 7.483%. The following month, from February 2 to February 28, 2007, the interest rate was decreased

to a "teaser" rate of 1%. After March 1, 2007, the adjustable interest rate was calculated by adding 2.55% to an "Index" figure, resulting in an interest rate of approximately 7.5%.[1] The loan terms guarantee that the "interest rate will never be greater than [9.75%]." Dkt. 1-3 at 43.

The mortgage loan included a "negative amortization feature," meaning that the principal balance continued to increase over time even as Taslis made timely payments. For example, after obtaining the loan, Taslis made timely payments for a full year, yet the principal balance increased from $1 million to $1,034,479.85 over that same period.

In May 2009, Taslis filed a Chapter 11 bankruptcy petition, which was later converted to a Chapter 7 bankruptcy petition. In her bankruptcy schedules, Taslis did not disclose any "contingent [or] unliquidated claims." Dkt. 22-1 at 48. In August 2011, as a result of the bankruptcy proceedings, Taslis obtained a discharge of her personal liability under the mortgage loan.

After the Federal Deposit Insurance Corporation shut down WaMu for predatory mortgage lending practices, JP Morgan Chase Bank took over most of WaMu's loan and servicing obligations. In October 2011, JP Morgan Chase Bank modified the terms of the

---

[1] The "Index" is defined as "the Twelve-Month Average . . . of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board." Dkt. 1-3 at 43.

3

mortgage loan. Under the modified loan, the new principal balance was increased to $1,199,949.59 -- however, $460,900 of the new principal balance was deferred without interest until the new maturity date of February 1, 2037.

In March 2019, Taslis defaulted on her mortgage loan. In April 2019, Defendant U.S. Bank was assigned the loan. As a result of Taslis' default, Select Portfolio Servicing, Inc. ("SPS"), the authorized servicer acting on behalf of U.S. Bank, sent Taslis a "90-day Notice of Right to Cure Your Mortgage Default" and a "Notice of Right to Request a Modified Mortgage Loan." After Taslis failed to cure her default, U.S. Bank scheduled a foreclosure sale of the Property for March 22, 2023.

## II. Procedural History

In February 2023, Taslis filed a complaint in Middlesex Superior Court, seeking injunctive relief enjoining U.S. Bank from conducting a non-judicial foreclosure and public auction of the Property. See Dkt. 1-3. U.S. Bank timely removed the case to this Court on diversity grounds. Taslis moved for injunctive relief to enjoin the foreclosure sale of the Property. See Dkt. 15. The Court stayed the foreclosure sale pending a ruling on this motion. See Dkt. 18.

## LEGAL STANDARD

A preliminary injunction is considered an "extraordinary remedy," appropriate only when a plaintiff has demonstrated clear

4

entitlement to the relief. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must demonstrate (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm, (3) a balance of equities in its favor, and (4) that granting the injunction will not adversely affect the public interest. See TEC Eng'g Corp. v. Budget Molders Supply, Inc., 82 F.3d 542, 544 (1st Cir. 1996).

## DISCUSSION

### I. Likelihood of Success

Taslis' primary claim is that U.S. Bank and its predecessors funded a high-cost home mortgage loan to Taslis in violation of the Massachusetts Predatory Home Loan Practices Act, Mass. Gen. Laws ch. 183C ("PHLPA") (Count I). Enacted in 2004, the PHLPA aims to "protect borrowers from predatory lending by creating a 'broad scheme of liability' against lenders that make 'high-cost mortgage loans.'" HSBC Bank USA, N.A. v. Morris, 190 N.E.3d 485, 490 (Mass. 2022) (quoting Drakopoulos v. U.S. Bank Nat'l Ass'n, 991 N.E.2d 1086, 1092 n.11 (Mass. 2013)). The PHLPA provides that "[a] lender shall not make a high-cost home mortgage loan unless the lender reasonably believes at the time the loan is consummated that 1 or more of the obligors, will be able to make the scheduled payments to repay the home loan." Mass. Gen. Laws ch. 183C, § 4. Taslis

also seeks declaratory judgment and alleges six other state law claims (Counts II-VIII).

## A. Judicial Estoppel

As a threshold matter, U.S. Bank argues that Taslis is judicially estopped from pursuing her claims relating to her mortgage loan because she failed to identify these claims in her bankruptcy proceeding. Taslis did not address U.S. Bank's judicial estoppel arguments in her briefing. Judicial estoppel is an equitable doctrine applied to preclude a party from asserting a claim in a legal proceeding inconsistent with a claim made in a prior proceeding. See Guay v. Burack, 677 F.3d 10, 16 (1st Cir. 2012). In applying the doctrine of judicial estoppel, courts consider two primary factors: 1) "the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive," and 2) "the responsible party must have succeeded in persuading a court to accept its prior position." Id. (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004)). In particular, a failure to disclose a "claim as an asset in a bankruptcy proceeding is a prior inconsistent position that may serve as the basis for application of judicial estoppel, barring the debtor from pursuing the claim in a later proceeding." Id. at 17.

Taslis' present claims are not judicially estopped because they did not exist at the time of her bankruptcy proceeding in

2009. As part of her bankruptcy petition, Taslis filed bankruptcy schedules, including "Schedule B - Personal Property," which specifically asked Taslis to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," along with an "estimated value of each." Dkt. 22-1 at 48. Taslis did not list any such claims on the schedule. Under "Schedule D – Creditors Holding Secured Claims," Taslis disclosed the mortgage on the Property. Id. at 51. In 2011, Taslis obtained a discharge of her personal liability under the mortgage loan.

Taslis' present claims arise in response to U.S. Bank's notice of a foreclosure auction of the Property, originally scheduled for March 22, 2023. The PHLPA permits a borrower to pursue a claim for a violation of the PHLPA "after an action to collect on the home loan or foreclose on the collateral securing the home loan has been initiated, or in any action to enjoin foreclosure or preserve or obtain possession of the home that secures the loan." Mass. Gen. Laws ch. 183C, § 15(b)(2). At the time of her bankruptcy proceeding, Taslis was not aware that, more than ten years later, she would default on her loan and would have to seek to enjoin U.S. Bank's foreclosure of the Property. Thus, Taslis' statement in 2009 that she did not have any "contingent [or] unliquidated claims" to declare in her bankruptcy proceeding is not inconsistent with her pursuit of claims under the PHLPA today to prevent

7

foreclosure of the Property. See SEC v. Happ, 392 F.3d 12, 20 (1st Cir. 2004) ("The proponent [of judicial estoppel] must show 'that the party to be estopped succeeded previously with a position directly inconsistent with the one [she] currently espouses.'") (quoting In re Bankvest Cap. Corp., 375 F.3d 51, 60 (1st Cir. 2004)). Taslis is not judicially estopped from pursuing her claims against U.S. Bank.

**B. Predatory Home Loan Practices Act Claim**

Taslis argues that she is likely to succeed on her claim that U.S. Bank is liable for violating the PHLPA because U.S. Bank's predecessors knew that Taslis would be unable to repay her loan and that the loan "was doomed for failure." Dkt. 1-3 at 12. In response, U.S. Bank contends that Taslis' loan does not meet the statutory criteria for a "high-cost home mortgage loan" and is thus not entitled to benefit from the provisions of the PHLPA.

The PHLPA defines the term "high-cost home mortgage loan" as follows:

> [A] consumer credit transaction that is secured by the borrower's principal dwelling, other than a reverse mortgage transaction, a home mortgage loan that meets 1 of the following conditions:
>
> (i) the annual percentage rate at consummation will exceed by more than 8 percentage points for first-lien loans, or by more than 9 percentage points for subordinate-lien loans, the yield on United States Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by

8

>the lender; and when calculating the annual percentage rate for adjustable rate loans, the lender shall use the interest rate that would be effective once the introductory rate has expired.
>
>(ii) Excluding either a conventional prepayment penalty or up to 2 bona fide discount points, the total points and fees exceed the greater of 5 per cent of the total loan amount or $400; the $400 figure shall be adjusted annually by the commissioner of banks on January 1 by the annual percentage change in the Consumer Price Index that was reported on the preceding June 1.

Mass. Gen. Laws ch. 183C, § 2. In support of its position, U.S. Bank submitted an affidavit by Daniel Maynes, a Document Control Officer of SPS, explaining how Taslis' mortgage loan does not satisfy either condition set forth in the PHLPA to qualify as a "high-cost home mortgage loan." See Dkt. 35.

With respect to the first condition, the first step in evaluating Taslis' mortgage loan is to determine the highest interest rate the loan could have charged without becoming a "high-cost home mortgage loan" under the PHLPA. "That statutory threshold is calculated by identifying the yield on United States Treasury securities for bonds of comparable maturity at the relevant time and adding 8 percentage points." Maldonado v. AMS Servicing LLC, 2012 WL 220249, at *4 (D. Mass. Jan. 24, 2012). Taslis executed her application for a thirty-year mortgage on January 16, 2007. Thus, the date for determining the applicable Treasury rate is December 15, 2006 (i.e., "the fifteenth day of the month immediately preceding the month in which the application" was

9

received by WaMu). On that date, the Treasury rate for a thirty-year bond was 4.72%. See Dkt. 36-1 at 10. Thus, the statutory threshold at the time of the loan was eight percentage points above 4.72%, or 12.72%. The next step is to determine whether Taslis' mortgage loan had an interest rate greater than that threshold. Although the loan had an adjustable interest rate, the interest rate was always capped at a maximum amount of 9.75%, as set forth in the loan terms. See Dkt. 1-3 at 43. Thus, the interest rate on the mortgage loan could never exceed the statutory threshold of 12.72%. Accordingly, Taslis' mortgage loan does not meet the first condition to qualify as a high-cost mortgage loan under the PHLPA.

With respect to the second condition, a loan qualifies as a high-cost mortgage loan if "the total points and fees exceed the greater of 5 per cent of the total loan amount or $400." Mass. Gen. Laws ch. 183C, § 2. The "total loan amount" is defined by the PHLPA as "the face amount of the note," id., which for Taslis' mortgage loan was $1 million. Thus, the total points and fees charged to Taslis must have exceeded $50,000, or 5% of $1 million, in order for her loan to qualify as a high-cost mortgage loan. However, Taslis' total settlement charges amounted to only $13,755.91. See Dkt. 35 at 5; Dkt. 35-1 at 44. Accordingly, Taslis'

10

mortgage loan does not meet the second condition to qualify as a high-cost mortgage loan under the PHLPA.[2]

Taslis has not provided any calculations or affidavits to the contrary. Instead, Taslis relies on two decisions by the Massachusetts Supreme Judicial Court ("SJC"), which she argues support the conclusion that a mortgage loan does not need to strictly satisfy the PHLPA's statutory criteria to be considered a high-cost mortgage loan. Taslis argues that the analysis of whether a loan qualifies as a high-cost mortgage loan should instead center on the concept of unfairness and a lender's recognition of a borrower's inability to repay. However, neither of the cited cases supports such a conclusion. In Commonwealth v. Fremont Inv. & Loan, the SJC found that even though the loans at issue were not high-cost mortgage loans, the PHLPA could still be recognized as "an established, statutory expression of public policy that it is unfair for a lender to make a home mortgage loan

---

[2] U.S. Bank also argues that Taslis' mortgage loan is not a "high-cost home mortgage loan" under the PHLPA because it is not secured by Taslis' "principal dwelling," as required under Mass. Gen. Laws ch. 183C, § 2. Although Taslis no longer resides at the Property, she did so when she executed her mortgage in 2007. Caselaw suggests that the determination of whether a loan is secured by a principal dwelling is made at the time of mortgage execution. See George v. Stonebridge Mortg. Co., 988 F. Supp. 2d 142, 149 (D. Mass. 2013) (dismissing PHLPA claim in part due to plaintiffs' failure to allege "which property was their principal dwelling at the time the mortgages were executed"). Regardless, the Court finds that Taslis' mortgage loan fails to satisfy the statutory criteria for qualifying as a "high-cost home mortgage loan," as described above.

secured by the borrower's principal residence in circumstances where the lender does not reasonably believe that the borrower will be able to make the scheduled payments and avoid foreclosure." 897 N.E.2d 548, 560 (Mass. 2008). But the claim at issue in Fremont was an alleged violation of Mass. Gen. Laws ch. 93A, not a direct claim under the PHLPA. Although the Fremont court found that the PHLPA could be "read to establish a concept of unfairness that may apply in similar contexts," the SJC did not alter or change the definition of "high-cost home mortgage loan" under the statute. Id. In HSBC Bank USA, N.A. v. Morris, the other case cited by Taslis, the SJC expressly declined to address whether the loan at issue there qualified as a high-cost mortgage loan. 190 N.E.3d at 490 n. 11 ("On appeal, HSBC contends that the Morrises' home mortgage loan was not a high-cost mortgage loan subject to the PHLPA, an argument it did not press before the Housing Court and which we do not reach on appeal.").

Because Taslis has not sufficiently demonstrated that her mortgage loan was subject to the PHLPA, she has not met her burden of demonstrating a likelihood of success on the merits of her PHLPA claim.

### C. Other State Law Claims

Taslis has not demonstrated a likelihood of success on her seven other claims. Taslis argues that her other claims "are all preserved by the PHLPA and all stem from the origination,

12

modification and servicing of this unconscionable loan product." Dkt. 15 at 6. However, without the benefit of the PHLPA's exception to the statute of limitations in the event of a foreclosure action, see Mass Gen. Laws ch. 183C, § 15(b)(2), five of Taslis' state law claims are likely time-barred. Taslis' claim for violations of Chapter 93A (Count II) is subject to a four-year statute of limitations; her claims for breach of contract (Count V), breach of implied covenant of good faith and fair dealing (Count VI), and unconscionable contract (Count VII) are subject to a six-year statute of limitations; and her claim for intentional infliction of emotional distress (Count VIII) is subject to a three-year statute of limitations. See Mass. Gen. Laws ch. 260, § 5A; id. § 2; id. § 2A. Therefore, given that Taslis' mortgage loan was executed in 2007 and modified in 2011, the limitations period on those claims have likely expired. See, e.g., George v. Stonebridge Mortg. Co., 988 F. Supp. 2d 142, 150-51 (D. Mass. 2013) (holding that cause of action under Chapter 93A accrues when the loan is made, with the limitations period expiring four years later).[3]

Under Mass. Gen. Laws ch. 260, § 36, a party can assert certain counterclaims without regard to statutes of limitations, although any recovery is limited to the extent of the other party's

---

[3] Moreover, with respect to Taslis' Chapter 93A claim, Taslis allegedly failed to serve U.S. Bank with a demand letter as required under Mass. Gen. Laws ch. 93A, § 9(3).

claim, based on the common law concept of recoupment. See HSBC Bank USA, 190 N.E.3d at 499 ("A successful recoupment claim by a defendant may 'reduce or extinguish the plaintiff's claim, but it could not result in an affirmative recovery for the defendant.'") (quoting Bose Corp. v. Consumers Union of U.S., Inc., 326 N.E.2d 8, 10 (Mass. 1975)). However, in this case, U.S. Bank's non-judicial foreclosure is not an "action" or "claim" to which Taslis may respond by filing a time-barred claim as a plaintiff in recoupment, particularly where Taslis has already been discharged in bankruptcy. See Hooley v. Bank of N.Y. Mellon, 2016 WL 8710450, at *3 (D. Mass. Apr. 15, 2016) ("Plaintiffs have not established that a cause of action for recoupment, when brought by a homeowner in response to a non-judicial foreclosure effort, is permitted by Massachusetts law."); Raad v. Lime Fin. Servs., Ltd., No. 11-11791, 2012 WL 4469107, at *7 (D. Mass. Sept. 28, 2012) ("The threat of a non-judicial foreclosure does not constitute an action, to which [the borrower] could respond by filing an action for recoupment in court.").

Taslis' two claims that are not subject to any statute of limitations -- Declaratory Judgment (Count III) and violation of Mass. Gen. Laws ch. 244, § 35B (Count IV) -- are not addressed in her briefing. Thus, Taslis has not met her burden of demonstrating a likelihood of success on any of her claims.

14

## II. Irreparable Harm, Balance of Hardships, and Public Interest

Even though Taslis is not currently using the Property as her primary residence, she argues she is still subject to irreparable harm if U.S. Bank forecloses on her Property. See Foley v. Wells Fargo Bank, N.A., 109 F. Supp. 3d 317, 328 (D. Mass. 2015) (finding that "foreclosure would constitute irreparable harm to [plaintiff]"). However, Taslis remains in default under the terms of her mortgage loan and continues to owe payments spanning back to March 2019. U.S. Bank states that it continues to advance funds for taxes and insurance on the Property.

Even if the other preliminary injunction factors favored Taslis, she is not entitled to injunctive relief because "[l]ikelihood of success on the merits is the critical factor in the analysis." Sankey v. Aurora Loan Servs., LLC, 757 F. Supp. 2d 57, 59 (D. Mass. 2010); see also Walsh v. Seterus Inc., 2012 WL 6052008, at *2 (D. Mass. Dec. 4, 2012) ("Unfortunately, no matter how sympathetic her situation may be, the Court's decision cannot be based solely on the balance of harms among the parties. If the requisite legal requirements have not been met, the Court is not empowered to issue the requested injunction.").

## III. Contractual Right

Finally, Taslis argues that injunctive relief is appropriate because she maintains a contractual right to bring "a court action to assert the non-existence of a default or any other defense of

15

Borrower to acceleration and sale." See Dkt. 15 at 7. However, the provision that Taslis points to, Paragraph 22 of the mortgage loan, states in full:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

Dkt. 1-3 at 31. The SJC has explained that provisions of this nature are meant to ensure that lenders provide notice to borrowers of their right to bring any valid defenses to prevent a foreclosure sale from going forward. See Pinti v. Emigrant Mortg. Co., Inc., 33 N.E.3d 1213, 1225 (Mass. 2015) ("[I]n a nonjudicial foreclosure jurisdiction like Massachusetts, misstating [] information in a way to suggest that a mortgagor with a defense does not need to initiate a lawsuit but may wait to respond to a foreclosure lawsuit filed by the mortgagee can have disastrous consequences for the mortgagor."); see also Mitchell v. Selene Fin., LP, 2024 WL 733283, at *2 (D. Mass. Feb. 22, 2024) (finding a similar provision describes a "default notice" that informs borrowers of "their right to initiate a legal action if they wished to assert any defenses to foreclosure"). Taslis does not allege that U.S. Bank or SPS, its authorized servicer, failed to provide her with adequate notice. Paragraph 22 of the Mortgage loan does not provide Taslis

16

the contractual right to bring time-barred claims, nor does it provide her the contractual right to injunctive relief.

## ORDER

For the foregoing reasons, Taslis' motion for injunctive relief (Dkt. 15) is **DENIED**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge